UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

ELIZABETH HARDING WEINSTEIN,

               Plaintiff,

                                       CIVIL CASE NO:

      -against-

                                       **VERIFIED 1983**

**VILLAGE of BRIARCLIFF MANOR,**                      **COMPLAINT**
**BRIARCLIFF POLICE DEPARTMENT,**
**JUSTICE HOWARD T. CODE,** Personally &
in his Official capacity as Justice of the Briarcliff
Village Court; **RORI M. ZIRMAN,** Personally & in her
Official Capacity as Court Clerk; **PHILIP E. ZEGARELLI,**
Personally & in his Official Capacity as Village Manager;
**PO CODY WILKINSON,** Personally & in his Official Capacity
 as a Police Officer; **LT. DOMINICK BUETI,**
Personally & in his Official Capacity as a Police Officer;
**SGT THOMAS NACKE,** Personally & in his Official Capacity as
a Police Officer; **DET. FRED GALBRAITH,** Personally
& in his Official Capacity as a Police Officer; Former **CHIEF
DONALD GOREY,** Personally & in his Official Capacity as
Chief Of Police; **PO GREGORY CAMPUS,** Personally & in his
Official Capacity as a Police Officer; **SGT WILLIAM BASSETT,**
Personally & in his Official Capacity as a Police Officer;
**MARIA PASCETTA,** Personally & in her Official Capacity
as Secretary to Village Manager; **MAYOR STEVEN A. VESCIO,**
Personally and in his Official Capacity as Mayor of the Village of
Briarcliff Manor; **EDWARD E. MIDGLEY,** Personally and in his
Official Capacity as member of BOARD OF TRUSTEES; **PETER E.
CHATZKY,** Personally and in his Official Capacity as member
 of BOARD OF TRUSTEES; **KEVIN HUNT** Personally and in
 his Official Capacity as member of BOARD OF TRUSTEES;
**SABINE WERNER** Personally and in his Official Capacity as
member of BOARD OF TRUSTEES; **JOHN DOE 1-10; BRIAN
STRYKER WEINSTEIN; MARIE VITALE,** Personally and her
Official Capacity as a Court Appointed Attorney; **DANIEL POZIN,**
Personally and his Official Capacity as Attorney for Briarcliff Manor,
**DAVID LAUSCHER,** Personally and in his Official Capacity as
Assistant District Attorney; **JOYCE MILLER,** Personally and in her
Official Capacity as Assistant District Attorney; **FRED GREEN**,
Personally and in his Official Capacity as Assistant District Attorney
                            Defendants.
————————————————————————X

This Complaint by Plaintiff, Elizabeth Harding Weinstein, Pro Se, (the "Plaintiff"), being of sound mind and body and fully competent, respectfully shows to this Court and alleges:

## NATURE OF ACTION

1.     The facts on this case are egregious.  Plaintiff is a victim of severe domestic violence, narcissistic abuse and constitutional right violations by the Defendants and her husband, Brian Stryker Weinstein, a Senior Litigation Partner at Davis Polk and Wardwell.

2.     This is an action to recover money damages arising out of defendants violations of Plaintiff, ELIZABETH HARDING WEINSTEIN's rights under the constitution and laws of the United States and the State of New York, as a result of Plaintiff's unlawful arrest and false imprisonment on January 4, 2021 inside of the Briarcliff Manor, Municipal building, Clerk's office, located at 1111 Pleasantville Road, Briarcliff, New York, while trying to file proper forms with Village employees, on the basis of false retaliatory allegations, filing false police reports, and a faulty investigation by the defendants, and an incomplete and dubious investigation of the charges.

3.     The multiple counts of false imprisonment at the police station, at Westchester County Correction Facility, and at Westchester Medical Center was the culmination of over eight months of retaliation, coercion, harassment, intimidation, and assault of the Plaintiff by Defendants, as retaliation for Plaintiff exposing corrupt practices of the Defendants, and the domestic violence by Defendant Brian Stryker Weinstein.

4.     As a result of this arrest, Plaintiff was falsely imprisoned at the Briarcliff Manor Police Department, incarcerated for approximately five (5) days in solitary confinement at the Westchester Correctional Facility, and then falsely imprisoned again and maliciously brought to a psychiatric emergency room upon release from the Correctional Facility, in a thinly-veiled attempt to discredit the Plaintiff.  Plaintiff was subjected to multiple unwanted medical procedures, handcuffed to walls, shackled hands, feet and waist.  Defendants used excessive force, and defendants illegally searched and seized Plaintiff's belongings which have not yet been returned.

5.     The State criminal charges against are bogus, retaliatory, and were recorded both by Plaintiff and by body camera, evidencing a meritless arrest.

## JURISDICTION

6.      That Jurisdiction is founded upon the existence of a Federal Question.

7.      This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of a right, privilege, and immunity secured to plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. §1983) and arising under the law and statutes of the State of New York.

8.      Jurisdiction is founded upon 28 U.S.C. §1331 AND 1343(3) and (4), this being an action authorized by law to redress the deprivation under color of law, statute, ordinance, regulation, custom and usage of a right, privilege, and immunity secured to a plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

## PARTIES

9.      That the plaintiff ELIZABETH HARDING WEINSTEIN is United States Citizen and is a resident of Briarcliff Manor, County of Westchester, State of New York.

10.     Upon information and belief, that at all times hereinafter mentioned, the defendant VILLAGE of BRIARCLIFF MANOR, was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

11.     Upon information and belief, that at all times hereinafter mentioned, the defendant VILLAGE of BRIARCLIFF MANOR, its agents, servants and employees operated, maintained and controlled the BRIARCLIFF MANOR POLICE DEPARTMENT, including all Detectives and police officers thereof.

12.     Upon information and belief, at all times hereinafter mentioned, and on or prior to the January 4, 2021 defendant, Police Officer Wilkinson was employed by defendants VILLAGE of BRIARCLIFF MANOR and BRIARCLIFF MANOR POLICE DEPARTMENT,  as a Police Officer.

13.     Upon information and belief, at all times hereinafter mentioned, and on or prior to January 4, 2021, defendant, Chief Bueti was employed by defendants VILLAGE of BRIARCLIFF MANOR and BRIARCLIFF MANOR POLICE DEPARTMENT as a Lieutenant.

14.        Upon information and belief, at all times hereinafter mentioned, and on or prior to January 4, 2021, defendant, Police Officer Sgt. Nacke, was employed by defendants VILLAGE of BRIARCLIFF MANOR and BRIARCLIFF MANOR POLICE DEPARTMENT as a Sergeant.

15.        Upon information and belief, at all times hereinafter mentioned, and on or prior to January 4, 2021, defendant, Det. Galbraith, was employed by defendants VILLAGE of BRIARCLIFF MANOR and BRIARCLIFF MANOR POLICE DEPARTMENT as a Detective.

16.        Upon information and belief, at all times hereinafter mentioned, and on or prior to January 4, 2021, defendant Police Officer Campus, was employed by defendants VILLAGE of BRIARCLIFF MANOR and BRIARCLIFF MANOR POLICE DEPARTMENT as a Police Officer.

17.        Upon information and belief, at all times hereinafter mentioned, and on or prior to January 4, 2021, defendant Sgt William Basset, was employed by defendants VILLAGE of BRIARCLIFF MANOR and BRIARCLIFF MANOR POLICE DEPARTMENT as a Sargent.

18.        That the defendant, BRIAN STRYKER WEINSTEIN, is United States Citizen and is a resident of Briarcliff Manor, County of Westchester, State of New York and married to Plaintiff.

19.        Upon information and belief, at all times hereinafter mentioned, and on or prior to January 4, 2021, defendant JUSTICE HOWARD T. CODE was and is a Judge for the Briarcliff Manor Village Court.

20.        Upon information and belief, that at all times hereinafter mentioned, and on or about January 18, 2011, defendant PHILIP E. ZEGARELLI was employed by defendant VILLAGE of BRIARCLIFF MANOR as Village Manager.

21.        Upon information and belief, that at all times hereinafter mentioned, and on or about January 18, 2011, defendant RORI M. ZIRMAN was employed by defendant VILLAGE of BRIARCLIFF MANOR as Court Clerk.

22.        Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant CHIEF DANIEL GOREY was employed by defendants the VILLAGE of BRIARCLIFF MANOR as Chief of Police.

23.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant MYOR STEVEN VESCIO was employed by defendants the VILLAGE of BRIARCLIFF MANOR as Mayor.

24.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant DANIEL POZIN was employed by defendants the VILLAGE of BRIARCLIFF MANOR as Village Attorney.

25.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant Marie Vitale was illegal representation unlawfully appointed by Defendant Judge Howard T. Code.

26.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant MARIE PASCETTA was employed by defendant VILLAGE of BRIARCLIFF MANOR as Secretary to the Village Manager.

27.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant JOYCE MILLER was employed as an Assistant District Attorney in the State of New York.

28.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant DAVID LAUSCHER was employed as an Assistant District Attorney in the State of New York.

29.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant FRED GREEN was employed as an Assistant District Attorney in the State of New York.

30.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant MARIE PASCETTA was employed by defendant VILLAGE of BRIARCLIFF MANOR as Secretary to the Village Manager.

31.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant EDWARD MIDGLEY was a BOARD MEMBER OF VILLAGE of BRIARCLIFF MANOR.

32.       Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant PETER CHATZKY was a BOARD MEMBER OF VILLAGE of BRIARCLIFF MANOR.

33.      Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant KEVIN HUNT was a BOARD MEMBER OF VILLAGE of BRIARCLIFF MANOR.

34.      Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendant SABINE WERNER was a BOARD MEMBER OF VILLAGE of BRIARCLIFF MANOR.

35.      Upon information and belief, that at all times hereinafter mentioned, and on or about January 4, 2021, defendants JOHN DOES 1-10 were employed by defendant the VILLAGE of BRIARCLIFF MANOR and/or defendant BRIARCLIFF MANOR POLICE DEPARTMENT.

36.      This action arises under the United States Constitution, particularly under provision of the Fourth and Fourteen Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983 and the rights under the Constitution and laws of the State of New York.

37.      Each and all of the acts of the defendants alleged herein were done by the defendants, their agents, servants and employees, and each of them, not as individuals, but under the color and pretense of the statutes, ordinance, regulations, customs and usages of the State of New York, the County of Westchester, Village of Briarcliff Manor.


## JURY DEMAND

38. Plaintiff demands trial by jury in this action.


## STATEMENT OF FACTS

39.      Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked FIRST though THIRTY EIGHT with the same force and effect as is more fully and at length set forth herein.

40.     That on or about January 4, 2021, I, Plaintiff ELIZABETH HARDING WEINSTEIN, was lawfully and properly at Briarcliff Manor, Municipal building, Clerk's office, located at 1111 Pleasantville Road, Briarcliff Manor, New York, in the County of Westchester and State of New York, with the lawful purpose of filing a letter to Defendant JUDGE HOWARD T. CODE and submitting a FOIL request form, both legal documents, as a resident of Briarcliff Manor, at which time and place defendants then and there were at, as part of their regular and official employment as police officers and village employees for defendants VILLAGE of BRIARCLIFF MANOR and/or and BRIARCLIFF MANOR POLICE DEPARTMENT.

41.     While it is indisputably Plaintiff's right to file legal documents, for clarity of the Court, and to illustrate the ongoing retaliatory nature of Defendants 'actions, allow me to briefly explain the documents being filed by me at the Village. My husband, Brian Stryker Weinstein, is a Senior Litigation Partner at Davis Polk & Wardwell, and a previous member of the Briarcliff Village Zoning Board, with heavy influence over the Courts. I have been the victim of Mr. Weinstein's severe narcissistic abuse and domestic violence for 21 years and sought treatment through the Westchester County District Attorney's Office Victim's Justice Network beginning in 2013. (**EXHIBIT A:** Domestic Violence Letter Bussain)

42.     Upon information and belief, Mr. Weinstein has been using the BRIARCLIFF MANOR POLICE DEPARTMENT and Defendant JUDGE HOWARD T. CODE as part of his narcissistic abuse to harass and punish me since May 2020, after I found out my husband was a pedophile.   (**EXHIBIT B:** Brian Stryker Weinstein acknowledging Pedophilia).   On or around January 4, 2021 I was filing documents to illustrate the Defendants 'stonewalling and denial of my rights, to wit a FOIL form which highlighted that Defendants VILLAGE OF BRIARCLOFF MANOR and BRIARCLIFF MANOR POLICE DEPARTMENT were noncompliant with previous requests, and a letter to Defendant JUDGE HOWARD T CODE stating Defendant JUDGE HOWARD T. CODE was denying me my constitutional rights.

43.     An affidavit filed with the Defendant BRIARCLIFF MANOR POLICE DEPARTMENT on or around December 24, 2020 clearly summarizes the police stonewalling, refusal to investigate, refusal to meet with Plaintiff in any meaningful way

since May 2020 to accept and review evidence and the veracity of Brian Stryker Weinstein's domestic violence and pedophilia.

44.     Plaintiff went to Village Hall in person to file the documents and properly receive proof of the filing of said legal documents, with both Defendant ZIRMAN and the Village Administration.

45.     Defendant ZIRMAN was previously avoiding responding to Plaintiff's emails and phone calls leading up to the visit on January 4, 2021 as I informed Defendant ZIRMAN via voicemail I was filing documents that were unfavorable to Defendant ZIRMAN, Defendant JUDGE HOWARD T. CODE, Defendant BRIARCLIFF MANOR POLICE DEPARTMENT, and Defendant VILLAGE OF BRIARCLIFF MANOR.  Defendant ZIRMAN previously failed and refused to perform her official duties, including but not limited to:  to meet with the public and residents of Briarcliff;  take and file documents from the public; answer the questions of the public.

46.     Upon arriving in the office, Defendant an unidentified woman instructed the Plaintiff she would get Defendant ZIRMAN and asked Plaintiff to wait.  The unidentified woman never returned.

47.     Defendant ZIRMAN then failed and refused to perform her official duties, including but not limiting to: to meet with the public and residents of Briarcliff; take and file documents from the public; answer the questions of the public.  MS. ZIRMAN refused to answer her phone, refused to meet with Plaintiff, refused to accept, stamp and file the documents, and refused to answer any questions.

48.     After a long wait, an unidentified man walked by and Plaintiff asked if someone was getting Defendant ZIRMAN.  The unidentified man said he would get Defendant ZIRMAN and asked Plaintiff to wait.  The unidentified man never returned.

49.     While Plaintiff was waiting unnecessarily, phone logs from Defendant BRIARCLIFF MANOR POLICE DEPARTMENT (**EXHIBIT C:** https://www.instagram.com/tv/CKsggiapssv/?igshid=1q11o13lryo0m) reveal that after failing to perform her duties, Defendant ZIRMAN phoned Defendant BRIARCLIFF MANOR VILLAGE POLICE and conspired with Defendant BRIARCLIFF MANOR VILLAGE POLICE to commit deprivation of access to the Court and village services:

**Defendant ZIRMAN:** "I do have a quick question. Who-who opened the door and let Weinstein in? Ya, somebody let her in the building and I don't want to deal with her so I'm wondering who let her in?…... How did the door open?.....Someone with blueprints let her in?"

(Conversation here is cut by Defendant Briarcliff Manor Police. Plaintiff has submitted FOIL requests for the full conversations but Briarcliff Village and Police have wholly ignored these proper legal request, in violation of laws.)

**Defendant ZIRMAN:** I mean, you can let'em (the Lieutenant) know if he wants to that she's is *going to* get very, very agitated cuz we are not going out there to her."

50.      After Defendant ZIRMAN failed to perform her duties or speak to the Plaintiff in any way, and conspired with Defendant BRIARCLIFF MANOR POLICE to commit deprivation of access to the Court and village hall, I was lawfully and properly at the Briarcliff Manor, Municipal building, Clerk's office, when Defendant PHILIP E. ZEGARELLI, Village Manager, confronted me, in an aggressive manner, refused to accept my proper papers, precluding me from exercising my right to file legal papers with the defendant VILLAGE of BRIARCLIFF MANOR Village Office or Court Clerk's Office.

51.      Defendant ZEGARELLI  failed and refused to perform his official duties to oversee the proper functioning of "all departments of Village government," as is outlined in his duties on the Village of Briarcliff Manor's website, and used his official position as Village Manager, to: deny Plaintiff access to the Court Clerk; deny me the services of the Office of the Village Clerk;  deny me the services of filing a written FOIL request;  and deny me access to the public building.

52.      Plaintiff spoke to Defendant ZEGARELLI in a calm and professional manner, and requested that Defendant ZEGARELLI assist the Plaintiff with having Village employees perform their duties, properly file documents and provide proof of filing to the Plaintiff.

53.     While Plaintiff was speaking to Defendant ZEGARELLI, Defendant PO WILKINSON and Defendant CHIEF BUETI arrived in the Village Clerk's Office from the Police Station, which was located on the floor below.

54.     Upon information and belief, Defendant ZEGARELLI appeared to have advanced knowledge of PO WILKINSON'S and CHIEF BUETI'S involvement as Defendant ZEGARELLI was not surprised by their presence nor did Defendant ZEGARELLI ask why the Officers were there, and instead immediately welcomed and engaged the officers, as video evidence shows.

55.     Defendant ZEGARELLI, after failing to perform his official duties, and after abusing the power of his official position to deny a citizen the services of the village without probable cause and/or legal justification, welcomed PO WILKINSON and CHIEF BUETI and immediately requested the services of the Police to harass the Plaintiff and remove me from the premises.

56.     Defendant ZEGARELLI attempted to use a mask mandate as a thinly-veiled cause for his unlawful request for eviction, when phone calls provide evidence that Defendant ZIRMAN'S request for eviction was simply that Defendant ZIRMAN wished to evade her duties as Court Clerk and deprive me of access to the Court and Village Hall.

57.     Defendants PO WILKINSON and CHIEF BUETI took no measures to deescalate the situation or restore law and order to the lawful practices of the Village Offices.  At no time did Defendants PO WILKINSON or CHIEF BUETI notify Defendant ZEGARELLI his request was improper and an inappropriate use of the services of the police.

58.     PO WILKINSON, and CHIEF BUETI, who having the real and apparent ability to cause imminent harmful and offensive bodily contact and the power and authority to arrest and imprison the plaintiff, did so threaten these acts upon the plaintiff.


**EXHIBIT D: PO WILKINSON 01-04-21 BODY CAM FOOTAGE, APPROX 3:12 PM, (PLEASE NOTE CAM DISPLAYS T20:12:36)**

**PO WILKINSON:** (Silences his body cam while discussing something downstairs with LT BUETI, then begins walking out the hall.  Once sound comes on there is

no yelling or disturbance heard at all that PO WILKINSON falsely reports): NOW IT'S OUR TURN.

(PO Wilkinson arrives outside of Village Hall Door, approximately 18 steps up)

**HARDING WEINSTEIN** (to ZEGARELLI, while recording the incident on her phone)**:** So, you're denying me my constitutional rights?

**PO WILKINSON:** Hi Ms. Weinstein

**ZEGARELLI:** PLEASE ESCORT HER....

**HARDING WEINSTEIN:** Oh Hi!  How are you Mr. Wilkinson?

**ZEGARELLI:** Out of the building.  She does not have a mask.  I don't know or have any medical proof that she has the ability to be here without a mask.  This is a government building,

**PO WILKINSON:** OK

**ZEGARELLI:** I play by the Governor's rules and I'm going to ask you to escort her out.

**HARDING WEINSTEIN:** So let me be clear, the government's regulations…

**PO WILKINSON:** OK

**HARDING WEINSTEIN:** Officer Wilkinson, the Governor's regulations are that #1 You be able to medically tolerate it  #2 You be able to maintain 6 ft of distance #3 You're both…..

**PO WILKINSON:** (interrupting) You don't need to read me the Orders I'm well aware of the Orders.

**HARDING WEINSTEIN:** ….wearing masks and this is a thick glass partition here.  I am obeying all of those things, Sir,   and I am coming to file court documents…

**PO WILKINSON:** (interrupting) This is simple.

**HARDING WEINSTEIN:** I'm still speaking and you're interrupting me.  I'm coming to file court…..

**PO WILKINSON:** (yelling) NO NO NO, OK. THIS IS HOW THIS IS GONNA GO

**HARDING WEINSTEIN:** …court documents which I have a constitutional right to do.

**PO WILKINSON:** (yelling) I CAN HEAR YOU ALL THE WAY DOWNSTAIRS I CAN HEAR YOU OUTSIDE THIS BUILDING, OK? AT THIS TIME IT'S DISORDERLY CONDUCT.

**HARDING WEINSTEIN:** (quietly) You're yelling. I'm not disorderly.

**PO WILKINSON:** (yelling) YES! BECAUSE YOU ARE TRYING TO SPEAK OVER ME.

**HARDING WEINSTEIN:** No I am not.

**PO WILKINSON:** I'M NOT TOLERATING ANY OF THIS. I'M NOT DEALING WITH THIS! OKAY? IT'S TIME FOR YOU TO LEAVE OR I WILL ARREST YOU FOR DISORDERLY CONDUCT.

**HARDING WEINSTEIN:** (laughs) You're trying to stop me…

**PO WILKINSON:** (interrupts, yelling) I UNDERSTAND THE ORDERS. I UNDERSTAND THE MASK. I'M NOT DISPUTING THAT. YOU, YOU HAVE TO LEAVE.

**HARDING WEINSTEIN:** Once again, you're yelling.

**PO WILKINSON:** (yelling) OK? ARE YOU GOING TO DISOBEY A LAWFUL-

**HARDING WEINSTEIN:** You're yelling, Sir. I am not disorderly in any way.

**PO WILKINSON:** (yelling) ARE YOU GOING TO DISOBEY A LAWFUL ORDER?

**HARDING WEINSTEIN:** There's nothing unlawful, there's nothing-

**PO WILKINSON:** (interrupting, yelling) ARE YOU GOING TO DISOBEY A LAWFUL ORDER?

**HARDING WEINSTEIN:** Your intent…

**PO WILKINSON:** (interrupting, yelling) YOU HAVE 3 SECONDS

**HARDING WEINSTEIN:** Your intent to stop me….

**PO WILKINSON:** (interrupting, yelling) DO I HAVE TO COUNTDOWN LIKE A MOTHER TO A CHILD?

**HARDING WEINSTEIN:** No, but I'm going to leave,

**PO WILKINSON:** 3.

**HARDING WEINSTEIN:** and I'm going to put this all on video.

**PO WILKINSON:** 2, 1.

**HARDING WEINSTEIN:** (walking out) You are absolutely insane.

**PO WILKINSON:** You going?

**HARDING WEINSTEIN:** Thank you for the evidence. This is awesome. Awesome.

59.      Plaintiff, continuing my lawful activity, complied with the officers 'unlawful request to leave, but informed PO WILKINSON and CHIEF BUETI that I was going to post my video of them denying me access to the public building and denying me my rights to file forms.

60.      Plaintiff HARDING WEINSTEIN informed CHIEF BUETI that she was going to hand her forms to Defendant ZEGARELLI to which CHIEF BUETI replied "Okay, okay."

61.      As I went to hand Defendant ZEGARELLI the forms, Defendant ZEGARELLI begins to shout in the background about not taking the forms, after which Defendant CHIEF BUETI can then be seen in the body cam video closing the door on me and Defendant WILKINSON is heard saying "No, no."

62.      Defendant PO WILKINSON put his hands on me and tried to stop me.  I then say "Excuse me!  Do NOT touch me."  The body camera is conveniently facing away from me at this time, but you can see me in the reflection of the glass, I am standing there, holding my belongings and filming PO WILKINSON.

63.      PO WILKINSON continued his false retaliatory allegations and asserted: "YOU are pushing me. YOU are pushing me."  The video shows again I am clearly standing still and filming PO WILKINSON, while maintaining I am not pushing him.  "Sir? I am not."

64.      CHIEF BUETI then joined PO WILKINSON and made continuous false accusations as I was standing still recording them.

65.      PO WILKINSON and CHIEF BUETI forcibly knocked my legal documents from my hand and took my phone and told me I was under arrest.

66.      Defendants PO WILKINSON and CHIEF BUETI effectuated a retaliatory arrest in the absence of criminal activity with no probable cause.

67.      I was falsely arrested by PO WILKINSON and CHIEF BUETI  at approximately 3:14 p.m. (T20:14:15)  To wit, less than 2 minutes passed from the time Defendant PO

WILKINSON and CHIEF BUETI arrived on the second floor to when they falsely arrested me. PO WILKINSON'S body cam shows PO WILKINSON arriving at or around T20:12:35 and falsely arresting me at or around T20:14:15.

68.        I was never read my rights at any time by any officer.

69.        The defendant officers, in effectuating the arrest, used excessive force twisting my arms; violently shoving and pushing me, resulting in bruising and psychological injury. I am a 48 year old woman, approximately 5'2.5" and 110 lbs. The two arresting officers are males over 6ft tall.

70.        PO WILKINSON and CHIEF BUETI quickly overpowered me all the while falsely accusing me of resisting arrest.

71.        When I said I was leaving and asked why PO WILKINSON and LT BUETI were arresting me, PO WILKINSON said "Disorderly Conduct." (EXHIBIT D: PO WILKINSON Body Cam at approx T20:14:41)

72.        Upon information and belief, Defendant MARIA PASCETTA, after failing to perform her duties and assist Plaintiff in any way, called Defendant BRIARCLIFF MANOR POLICE DEPARTMENT with false and baseless accusations regarding Plaintiff. (**EXHIBIT E**: https://www.instagram.com/p/CKsmqgPpq5U/?igshid=prjvc515j11z)

> **JANE DOE:**  Hi, It's Marie upstairs.  An Officer come upstairs?
>
>                        Because…um…. it's chaotic out front?
>
> **PO CAMPUS**: She is, uh, acting…uh, is that, uh, Miss Weinstein causing an issue?
>
> **JANE DOE:**     Yes it is.  Yes.
>
> **PO CAMPUS:**  OK!  Very Good.  Thank you.

73.        Defendant PO CAMPUS phoned Defendant PO SGT NACKE to go to the second floor.

74.        PO SGT NACKE arrived on the scene after Plaintiff was in handcuffs.

75.        PO WILKINSON and CHIEF BUETI were pulling me aggressively while walking and were about to pull me down stairs.  I asked the Officers to stop using excessive force, stop pulling me, and asked if they had their body cam on.  PO WILKINSON responded "You're under arrest.  You're walking. I do have my body cam on" to which CHIEF BUETI

replied by again falsely accusing me of resisting arrest "Stop RESISTING.  You have been asked to stop resisting."

76.     I requested the Defendants get my phone and legal documents from the floor.

77.     Defendant PO SGT NACKE used excessive force twisting Plaintiff's arm and holding the back of my neck as he and PO Wilkinson aggressively pulled me down the stairs.

78.     I was falsely detained, unlawfully restraining my freedom, in the Police Station by PO WILKINSON, CHIEF BUETI, PO SGT NACKE, PO CAMPUS, and other officers, beginning at or around 3:14 p.m.

79.     While I posed no risk to the Officers nor was I a flight risk, the Defendant POs kept me chained to the wall in an uncomfortable and restraining way and refused me access to my phone to record the incident in any way.

80.     In the station, Defendant PO WILKINSON yelled at me and berated me, and Defendant SGT NACKE pushed me even though I continuously asked PO WILKINSON to stop yelling at me and demand the Officers not push me. (**EXHIBIT D**: PO WILKINSON body cam)

81.     I informed Defendants PO WILKINSON and SGT NACKE that their actions constituted police harassment and brutality to which SGT NACKE acknowledged with "Thank you."  PO WILKINSON continued to yell, mischaracterize the events, and falsely accuse me.

82.     Defendants SGT NACKE and PO WILKINSON confiscated and seized my belongings, and later searched through them, seizing my backup phone which had remained in my purse the whole time.

83.     Defendant PO WILKINSON then returned upstairs and Defendant ZIRMAN is shown standing and talking to people while Defendant ZIRMAN is not wearing a mask and is touching her face and hands.   (**EXHIBIT D**: PO WILKINSON's body cam displays T20:17:43Z)

84.     Defendant PO WILKINSON asked Defendant ZIRMAN if anyone had my forms, and Defendant ZIRMAN confirmed that CHIEF BUETI was given my forms.

85.     Defendant ZIRMAN again failed to perform her official duties, to properly file my forms and provide CHIEF BUETI confirmation of the filing to give to me.  Defendant ZIRMAN denied me my rights, with intent and without remorse.

86.     Defendant ZEGARELLI again failed to perform his official duties to oversee the proper functioning of all departments of Village Government.  Defendant ZEGARELLI chose instead to deny me my rights, with intent and without remorse.

87.     After failing to perform his duties again, Defendant ZEGARELLI came out of his office without a mask and expressed his anger to Defendant PO WILKINSON that I was allowed entrance into the public building.


**EXHIBIT D: PO WILKINSON 01-04-21 BODY CAM FOOTAGE, APPROX 3:17 PM, (PLEASE NOTE CAM DISPLAYS T20:17:58)**

**ZEGARELLI**: Why did she get in the building?  I don't understand how she was allowed in the **fucking** building!

**PO WILKINSON**: (nervously tries to turn off his body cam) Err, sooo, umm…


88.     Defendant PO WILKINSON, fails to perform his duties as a Police Officer to properly record the evidence of Defendant ZEGARELLI's statements.  Instead, in a thinly veiled attempt to protect ZEGERELLI, PO WILKINSON actively turns off his body camera when proper police conduct requires officers to record all witnesses and preserve the evidence.

89.     PO WILKINSON, CHIEF BUETI,  and  other John Doe officers, confiscated plaintiff's cellphone and belongings and refused her access to them.

90.     I repeatedly asked Defendants PO WILKINSON, SGT NACKE, PO CAMPUS  to properly hand in Plaintiff's legal documents and foil request form to Defendant ZEGARELLI or ZIRMAN, which the officers refused to do.

91.     Defendant PO WILKINSON, SGT NACKE, and PO Campus, and other John Doe officers, repeatedly refused my numerous requests to make a phone call(s) to a lawyer, while in custody.

92.     Defendants Police Officers WILKINSON, SGT NACKE,  and  other John Doe officers, fabricated the facts in the Criminal complaint, in order to justify plaintiff's arrest.

93.      Plaintiff was chained to the wall at the Briarcliff Police station for over four hours total, and was being denied access to my cell phone to call an attorney.  Plaintiff was originally told they were issuing me a ticket, then, hours later and after some phone calls, the Defendant officers said they changed their mind that they were arraigning the Plaintiff because "(I) asked (them) to."

94.      Defendants SGT NACKE, PO WILKINSON, PO CAMPUS detained and booked me, and refused to allow me to call an attorney of my own choosing during that time.

95.      After hours of being detained, I was allowed to call an Attorney and left a message, then my phone was taken from me again.

96.      Defendant JUDGE HOWARD T. CODE arrived at the Police Station around 6 pm after the Plaintiff was held for over 3 hours.

97.      DEFENDANT JUDGE HOWARD T. CODE had private, ex parte communications with with Defendant PO WILKINSON and NACKE for over an hour.  Defendant PO WILKINSON and PO SGT NACKE would confer with JUDGE HOWARD T. CODE privately, come out and watch the videos out of sight but not out of earshot of the Plaintiff, then return to confer with Defendant JUDGE HOWARD T. CODE.  Upon information and belief, Defendant JUDGE HOWARD T. CODE assisted the Officers with the fabrication of the facts of the case.

98.      Defendant SGT NACKE refused to allow me a phone call to a lawyer and instead gave me the name and contact of an Attorney of Judge Howard T. Code's choosing, Ms. Anne Bianchi, 914-536-4847, abianchi@laswest.org.

99.      I insisted on having an attorney of my own choosing.  After demanding my rights, I was allowed to make a phone call from my phone.  As it was after hours and a lawyer was not answering, I asked if I could have a witness to the arraignment and Defendant SGT NACKE represented that the witness would be allowed to attend, as is evidenced in January 4, 2020 SUPPORTING DEPOSITION TO BMPD.

100.      I called a friend to come as a witness to the arraignment and to assist me.

101.      When the witness arrived, Defendant SGT NACKE refused to allow the friend to speak to me or attend the arraignment.

102.     I then asked to phone a lawyer to make sure there was a witness.  Defendants SGT
NACKE, PO WILKINSON, PO CAMPUS refused to allow me to contact an attorney,
including Ms. Bianchi.

103.     At approximately  7:05-7:15 pm, Defendant JUDGE HOWARD T. CODE then
violated Plaintiff's civil rights by arbitrarily and capriciously denying Plaintiff an
arraignment on or around January 4, 2021.

104.     Defendant JUDGE HOWARD T. CODE refused to allow me access to the
Briarcliff  Manor Village Court at all. I was not in front of Defendant JUDGE HOWARD
T. CODE on January 4, 2021 in any way, except to greet him hello as he walked past me
at his first arrival.

105.     Defendant PO WILKINSON and SGT NACKE informed me they were bringing
me to jail.

106.     Upon information and belief, Defendant JUDGE HOWARD. T. CODE falsified
legal documents, to wit, "COURT ARRAIGNMENT INFORMATION SHEET" and
"WESTCHESTER COUNTY DEPARTMENT OF CORRECTION UNIFORM
COMMITMENT FORM FROM LOCAL CRIMINAL COURT" which falsely states that
an arraignment was held on ""1/4/21" and that Defense Attorney "Marie Vitale,  Esq."
was present.

107.     When Plaintiff asked why I was being denied an arraignment, and detained in jail
overnight, and I reminded PO WILKINSON and SGT NACKE I had been there for four
hours without a mask and I could not tolerate a mask, but would wear one to prevent
going to jail if that was the issue, PO WILKINSON and SGT NACKE offered no
substantive reply.

108.     To further illustrate Defendant JUDGE HOWARD T. CODE 's arbitrary and
capricious rule in his court room, Defendant JUDGE HOWARD T. CODE previously
held arraignments without wearing masks on or around September 27, 2020.

109.     Defendant JUDGE HOWARD T. CODE further violated Plaintiff 's civil rights
by denying me a virtual arraignment that evening using my iPad or iPhone I had with me.

110.     Defendant JUDGE HOWARD T. CODE further violated Plaintiff 's civil rights
by illegally denying my Release on my Own Recognizance, mandated by New York

State law, on misdemeanor charges and without legal and/or factual justification, and instead remanded Plaintiff to prison for a virtual arraignment the following day.

111.    Defendants SGT NACKE and PO WILKINSON and CAMPUS denied me the right to contact a lawyer again, or get phone numbers from my phone to call a lawyer at our next location.

112.    Defendants SGT Nacke and PO Wilkinson refused to allow Plaintiff's belongings to accompany her to the place of incarceration.

113.    Defendant JUDGE HOWARD T. CODE falsely imprisoned Plaintiff, retaining me at Westchester County Department of Corrections, Valhalla without legal cause or justification for 24 hours.

114.    On or about January 5, 2021, while in solitary confinement, I was arraigned in front of Defendant JUDGE HOWARD T. CODE.

115.    Defendant JUDGE HOWARD T. CODE then tried to assign Ms. Maria Vitale, 914-682-1984, mvitalesq@gmail.com as my attorney.

116.    I refused Ms. Maria Vitale's primary representation as she had previously been assigned by JUDGE HOWARD T. CODE, acted unethically and had not prosecuted or defended my rights. I requested that Ms. Vitale serve only as Second Chair for the purposes of the arraignment. I made a statement that I was of sound mind and body and able to prosecute and defend my rights as a Pro Se litigant with assistance from legal services as Second Chair.

117.    Defendant DA DAVID LAUSCHER, working under Defendant DA JOYCE MILLER, was present at the arraignment and upon information and belief had access to view the body cam which provided exculpatory evidence on my behalf. DA LAUSCHER advanced the prosecution.

118.    It was later revealed to me Defendant DA JOYCE MILLER sent a letter to JUDGE CODE moments before the hearing requesting clarification on my Pro Se status, even though I was Pro Se since July, Defendant DA JOYCE MILLER ignored all previous communication on the issue until such time I was falsely imprisoned.

119.    At the January 5, 2021 arraignment hearing, Defendant JUDGE HOWARD T. CODE assigned the Plaintiff an Ex Parte Order of Protection in favor of Defendant PHILIP

ZEGARELLI which is broad, unenforceable, and denies me my rights to access to services of my Village Hall and Police.

120.     This instant Order of Protection was supported by DA LAUSCHER.

121.     Also at the January 5, 2021 arraignment hearing Defendant JUDGE HOWARD T. CODE ordered a bogus CPL 730 mental competency examination of me even after I stated in the arraignment that I was of sound mind and body, fully competent, and was of no threat to myself or others.

122.     Upon information and belief, Defendant BRIAN STRYKER WEINSTEIN has been using his inner workings of the Westchester Judiciary over the past eight months to have Judges, Police Officers, and District Attorneys, including but not limited to Defendant FRED GREEN attempt to coerce me into a psychiatric exam to discredit me and provide a cover for Defendant BRIAN STRYKER WEINSTEIN'S nefarious actions, abuse of process, and domestic violence thus far.

123.     Defendant JUDGE HOWARD T. CODE then remanded me to prison for seven weeks without cause.

124.     Since my release, Defendants BRIARCLIFF MANOR POLICE, Officers have instructed me that I am unable to come to the police station without an appointment "because of the Order of Protection" in favor of Defendant ZEGARELLI.

125.     At the end of the arraignment hearing, I directed Ms. Marie VITALE as Second Chair, to set up an immediate virtual conference with me, and to prepare an appeal. Ms. VITALE agreed, but then did not conference with me and did not prepare an appeal.

126.     I was told by prison guards that Defendant JUDGE HOWARD T CODE ordered that I be maintained on "suicide watch" which meant I was not allowed to have any books or writing material in my cell, that the lights be kept on 23 hours a day, and that a guard watched in my window and documented notes. I maintained that I was not a threat to myself or others and was of sound mind and body.

127.     Unidentified Prison Guards would intentionally mischaracterize in the "suicide watch" log that I was "pacing" when I was doing lunges in my cell to exercise my legs, or I was agitated or breathing heavily when I was meditating.

128.     After not hearing from Defendant VITALE and several days of trying to reach her, I was finally able to reach Defendant VITALE. Defendant VITALE made it clear she

would not file an appeal or take my proper directives in any way.  I made it clear she did not represent me and terminated her services.

129.        I hired Mr. Richard Ferrante to represent me and asked that he bring this case to an appellate Judge for immediate review.

130.        On or around January 8, 2021, Mr. Ferrante then held a "bail hearing," in violation of my directives, and of our laws, as misdemeanor charges do not require bail.

131.        I was released without bail, but Mr. Ferrante took positions in said "bail hearing" without my consent, that were expressly against my wishes, such as I would comply with competency exams or would be immediately returned to prison, and that I fully accepted the bogus Order of Protection issued in favor of Defendant ZEGARELLI.

132.        I was remanded back to my cell, even after being released.  I was held in solitary confinement for another four and a half to six hours.

133.        In violation of my rights, Prison Psychologists came to my cell to speak to me. I told him I was not interested in speaking with him as I was released and waiting to leave, and was not consenting to any exam. John Doe Psychologist coerced and manipulated me, refused to leave, and often left blank pages in between his notepad.

134.        While falsely imprisoned, Citi private bank closed all of my marital and personal bank accounts and issued checks to the home of Defendant BRIAN STRYKER WEINSTEIN, totaling over $240,000.

135.        I filed police reports with Defendants BRIARCLIFF MANOR POLICE regarding the missing funds and grand larceny.  Defendants BRIARCLIFF MANOR POLICE refused to contact me regarding the investigation.

136.        Defendants BRIARCLIFF MANOR POLICE closed my reports of grand larceny as "unfounded," and a "civil matter" without a proper investigation or taking evidence.

137.        The funds still remain unaccounted for and calls or emails to Defendant BRIAN STRYKER WEINSTEINs Attorney, Dina Kaplan, go ignored.

138.        Upon my release from prison, I was not allowed access to my belongings and instead told I was being brought to Westchester Medical Center for psychiatric evaluation. I maintained that I was of sound mind  and body, and such actions by the Corrections Officers was a nefarious act on their part.

139.    At Westchester Medical Center I made it known I was a Columbia University trained nurse who was of sound mind and body but being subjected to severe narcissistic abuse.  I engaged the services of the Patient Care Representative, Director of the ER, and three doctors in the Psychiatric ER as witnesses to my sound mental state and the nefarious actions of the Corrections Officers.  I was released from the ER.

140.    Defendants BRIARCLIFF MANOR POLICE DEPARTMENT prevented me from having any access to my belongings upon my release from the false imprisonment on January 8, 2021 and refused to release my identification, purse, house keys, car keys, money, credit cards, phones, car, private documents to me until January 11, 2021 and only with the accompaniment of a lawyer.

141.    To date, defendants have failed and refused to return Plaintiff's two (2) phones.

142.    Defendants DET GALBRAITH and CHEIF BUETI asserted on January 11, 2021 that my cell phones "were not to be turned over to me" because "they were used in a commission of a crime," while refusing to tell me in what way they were used to commit a crime.

(**EXHIBIT F:** https://www.instagram.com/tv/CJ7kVnxJuw9/?igshid=1gsea8ivndo1i)

a.  Cell Phone One was never even taken out of Plaintiff's bag at any time, and contains evidence related to my husband Brian Stryker Weinstein's crimes. Cell Phone One was illegally searched for and seized.

b.  Cell Phone Two was the active phone used to record the whole event from the moment I arrived in Village Hall.  Cell Phone Two has exculpatory evidence and evidence of defendants 'false arrest, which Defendant SGT Nacke, PO Wilkinson, and PO Campus refused to accept.

c.  Defendant JUDGE HOWARD T. CODE refuses to sign or adjudicate in any way on an Emergency Order to Show Cause filed on or around January 13, 2021 to address the illegal property seizure and have my phones properly returned to me.

143.    Plaintiff has not been provided the body cam videos which show: her time being chained to the wall, Defendants denying Plaintiff her property, Defendants denying Plaintiff phone calls with a lawyer, Defendants refusing to take exculpatory evidence off

Plaintiff's phone, Defendants berating Plaintiff, Defendants acknowledging they were purposely retaining Plaintiff longer than required.

144.     Defendant SGT BASSETT has refused to take police reports that I came to file on or around February 22, 2021.

145.     Defendant RORI ZIRMAN and JUDGE HOWARD T CODE repeatedly ignore requests that I be allowed access to the Court to file documents and that I be allowed access to my file, violating rights to due process.

146.     I was notified on or around March 3, 2021 by Defendant RORI ZIRMAN that Defendant JUDGE HOWARD T. CODE scheduled a "competency hearing" for me at 3p on Monday, March 8, 2021.

147.     I have notified Defendant JUDGE HOWARD T. CODE that I was not properly noticed, nor is there any just, legal cause for said hearing, nor am I available for said hearing in multiple letters to the Court on March 5, 2021 and March 8, 2021.

148.     Defendants DANIEL POZIN, BRIARCLIFF MANOR BOARD OF TRUSTEES, MAYOR STEVE VESCIO, CHIEF GOREY have been repeatedly noticed since June 2020 of the nefarious and consistent actions of the Briarcliff Manor Police and Village employees to deny Plaintiff access to Village Hall, deny me access to the Police Station, deny me proper services of village employees or the Police, of the nefarious actions of the Police and Village employees, and of the suspected conspiracy with Defendant BRIAN STRYKER WEINSTEIN, but no meaningful action has been taken.

149.     The aforementioned defendants, their agents, servants and employees falsely arrested and imprisoned Plaintiff and deprived her of her rights and liberties as set forth in the Constitutions of the United States and of the State of New York, and threatened and used excessive physical force against her, and imprisoned her without any conduct on the part of the plaintiff to so warrant.

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. §1983 and Fourth, Fifth and Fourteenth Amendments Against all Defendants**

150.     Plaintiff repeats and re-alleges by reference paragraphs 1 through 149 as if fully set forth herein.

151.    By their conduct, as described herein, Defendants are liable for violations of 42 U.S.C. §1983 and the Fourth, Fifth and Fourteenth Amendments which prohibit the deprivation under color of state law of rights secured under the United States Constitution. Defendants, jointly and severally, have subjected Plaintiff to false arrest, false imprisonment, excessive force, malicious prosecution, abuse of process, assault, deprivation of access, obstruction of justice, conspiracy and illegal search and seizure.

152.    As a direct result of the illegal actions and conduct on the part of the defendants, their agents, servants and employees, plaintiff was falsely arrested and imprisoned, maliciously prosecuted and compelled to be arraigned and appear in Briarcliff Manor Village Court, County of Westchester and serve five days in solitary confinement.

153.    That at all times hereinafter mentioned, the defendants were employed in their respective capacities by the defendants VILLAGE OF BRIARCLIFF MANOR and/or BRIARCLIFF MANOR POLICE DEPARTMENT and were acting under the color of their official capacity and their acts were performed under the color or the policies, statutes, ordinances, rules and regulations of the State of New York, County of Westchester and the Village of Briarcliff Manor.

154.    That at all times hereinafter mentioned, Defendants, Police Officers and John Doe officers 1-10, were acting pursuant to orders and directives, or in conspiracy with Defendants THE VILLAGE OF BRIARCLIFF MANOR and/or BRIARCLIFF MANOR POLICE DEPARTMENT.

155.    That during all times hereinafter mentioned, the Defendants, Police Officers and /or other John Doe Officers, separately, and in concert acted under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of the State of New York, County of Westchester and VILLAGE OF BRAIRCLIFF MANOR and the defendants here, separately and in concert, engaged in the illegal conduct here mentioned to the injury of the plaintiff and her rights, privileges and immunities secured to her by the Fourth, Fifth and Fourteen Amendments to the Constitution of the United States,

**A) in that all of the actions of the defendants, their servants and employees, were committed with the intention to cause mental injury to the plaintiff, to arrest, restrain and**

imprison the plaintiff without her consent, the plaintiff was at all
times conscious of the arrest, did not consent to the false arrest
and imprisonment and was not otherwise privileged; and,

B) the arrest and imprisonment were not justified by
probable cause or other legal privilege; defendants, their agents,
servants and employees, acting under the usages of the State,
Village of Briarcliff Manor and County of Westchester and under
the authority of their office as police officers for said Village of
Briarcliff Manor, falsely charged the plaintiff with crimes
although the defendants, acting in such capacity knew that such
chargers were false; and,

C) that the defendants, their agents, servants and
employees failed to adequately and properly hire, retain, train,
supervise, discipline or in any other way control the behavior and
performance of the defendants, their agents, servants and
employees and in their hiring practices in the exercise of their
police functions and their failure to enforce the laws of the State
of New York is evidence of the reckless lack of cautious regard for
the rights of the public including plaintiff and exhibited a lack of
the degree of due care which prudent and reasonable individuals
would show in executing the duties of the defendants; and,

D) the failure of the defendants, their agents, servants
and employees to hire, train, supervise, discipline or in any other
way control the defendants, in the exercise of their functions and
to enforce the laws of the State of New York, the County of
Westchester and Village of Briarcliff Manor was and is carried
our willfully, wantonly, maliciously, and with such reckless
disregard for the dangers of harm and injury to the citizens of the

**State of New York and Village of Briarcliff Manor including plaintiff, and,**

**E)  due to the act of the defendants, their agents, servants and employees herein, the failure of the Village of Briarcliff Manor to discipline and properly hire defendants and the continued employment of the defendants present a clear and present danger to the citizens the of the Village of Briarcliff Manor and the State of New York; and,**

**F) that the defendants, their agents, servants and employees permitted the use of a policy and/or drafted policy that was violative of the Constitutional rights of the above named plaintiff; in that each and all of the acts alleged herein were done not as individuals but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State New York, Village of Briarcliff Manor and the County of Westchester and under the authority of their office as police officers for said village and county.**

156.       That by reason of the foregoing, the plaintiff has been damaged in a sum to be determined at trial. As a direct and proximate result of the individual Defendants' unlawful actions, Plaintiff has suffered damages including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## <u>SECOND CLAIM FOR RELIEF</u>

**42  U.S.C. §1983 and Fourth and Fourteenth Amendments Against all Defendants**

157.       Plaintiff repeats and re-alleges by reference paragraphs 1 through 156 as if fully set forth herein.

158.       By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of her right to be free from unreasonable searches and seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth

Amendments, Defendants are liable for violation of 42 U.S.C. §1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

159.  As a direct and proximate result of the individual Defendants' unlawful actions, Plaintiff has suffered damages including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## THIRD CLAIM FOR RELIEF

### 42  U.S.C. §1983 and Fourth and Fourteenth Amendments Against all Defendants

160.  Plaintiff repeats and re-alleges by reference paragraphs 1 through 159 as if fully set forth herein.

161.  By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of her right to be free from excessive force in the course of an arrest as required by the Fourth and Fourteenth Amendments, Defendants are liable for violation of 42 U.S.C. §1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

162.  As a direct and proximate result of the individual Defendants' unlawful actions, Plaintiff has suffered damages including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. §1983 and Fourth and Fourteenth Amendments Against all Defendants

163.  Plaintiff repeats and re-alleges by reference paragraphs 1 through 162 as if fully set forth herein.

164.  By their conduct, as described herein, and acting under color of state law, Defendants are liable under 42 U.S.C. §1983 for the violation of her constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

165.  That on or about January 4, 2021, in The County of Westchester, Village of Briarcliff Manor and State of New York, and at subsequent times thereafter, including but not limited to the Village Criminal Court, the defendants, their agents, servants and

employees maliciously prosecuted and detained plaintiff, ELIZABETH HARDING WEINSTEIN, without any just right or grounds therefore.

166.   That the plaintiff was and is wholly innocent, and was forced by the defendant to submit to court proceedings.

167.   That the defendants, their agents and employees acting in the performance of their employment and within the scope of their authority, testified falsely and withheld vital information before a Judge of the Village Court of Briarcliff, the State of New York, in the County of Westchester.

168.   That the said prosecution and criminal charges and hearings were instituted and procured by the defendants, their agents, servants and employees in this action unlawfully and maliciously and without any reasonable or probable cause whatsoever therein. That the commencement and/or continuation of the criminal proceedings by the defendants against the plaintiff was without probable cause and with actual malice.

169.   Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of her constitutional rights. The anticipated prosecution by Defendant of Plaintiff constitutes malicious prosecution in that there was no basis for Plaintiff's arrest, yet Defendants intend to continue with the prosecution via, among other things, a competency hearing scheduled for March 8, 2021 at Briarcliff Village Court, which Plaintiff ultimately anticipates to be resolved in her favor.

170.   It was the intent and end result of the defendants to harm the plaintiff and deprive her of her civil rights.

171.   That defendants' action of falsely arresting and charging plaintiff, and her malicious prosecution and illegal imprisonment was done in order to obtain an illegal collateral objective, which was outside the legitimate ends of the Criminal Justice process.

172.   On information and belief, the defendants THE VILLAGE OF BRIARCLIFF and BRIARCLIFF MANOR POLICE DEPARTMENT failed to effectively screen, hire, train, supervise and discipline their police officers, including defendant police officers herein, for their propensity for violence, including excessive and unjustified force and restraint, for racial bias, lack of truthfulness, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers herein to be in a position to assault

and/or excessively and unjustifiably restrain the plaintiff, refuse him medical treatment for a serious medical need, and to otherwise cause him injury and violate his federal and state constitutional rights, and/or to permit these actions to take place with their knowledge or consent.

173.     On information and belief, the defendant police officers herein have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to, the defendants THE VILLAGE OF BRIARCLIFF and BRIARCLIFF MANOR POLICE DEPARTMENT that defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiff herein.

174.     On information and belief, the defendants THE VILLAGE OF BRIARCLIFF and BRIARCLIFF MANOR POLICE DEPARTMENT maintained an inadequate structure for risk containment and stress management relative to its police officers, and failed to create proper means of containing such risk and managing such stress. *Inter alia,* the structure was deficient, at the time of selection of police officers and thereafter during their employment, in its ability to evaluate and exchange information within the command structure about the performance of individual police officers; in its training of supervisory personnel to effectively and adequately evaluate performance of an officer; and its ability to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at large or to specific segments thereof. The effect of this was to permit police officers of the BRIARCLIFF MANOR POLICE DEPARTMENT to function at levels of significant and substantial risk to the public in general.

175.     The practice and policies still exists today, with little or no improvement.

176.     As a result of the foregoing conscious policies, practices, customs and/or usages, defendants  THE VILLAGE OF BRIARCLIFF and BRIARCLIFF MANOR POLICE DEPARTMENT have permitted and allowed the employment and retention of individuals as police officers whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent behavior. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct

alleged herein and otherwise a direct and proximate cause of the injuries to the plaintiff herein.

177.          As a direct and proximate result of the defendants 'wrongful policies, practices, customs and/or usages complained of herein, the plaintiff has suffered mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

178.          That by reason of the aforesaid unlawful and malicious abuse of process the plaintiff was deprived of her liberty, was subjected to great indignity, humiliation, pain and great distress of mind and body was held up to scorn and ridicule, was injured in her character and reputation, was prevented from attending her usual business and avocation, was injured in his reputation in the community and the said plaintiff has been otherwise damaged.

179.          That by reason of the aforesaid false arrest and false imprisonment, abuse of process and deprivation of her rights and liberties as guaranteed by the aforementioned constitutions, by the defendants, their agents, servants and employees, acting within the scope of their authority, and without any probable or reasonable cause, the plaintiff suffered great mental injury and was rendered sick, disabled, and among other things, she suffered conscious pain and suffering, and that she was otherwise damaged.

180.          As a direct and proximate result of the individual Defendants' unlawful actions, Plaintiff has suffered damages including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.


## FIFTH CLAIM FOR RELIEF

**42 U.S.C. §1983 and Fourth, Fifth and Fourteenth Amendments Against all Defendants**

181.          Plaintiff repeats and re-alleges by reference paragraphs 1 through 180 as if fully set forth herein.

182.          By their conduct, as described herein, and acting under color of state law, Defendants are liable under 42 U.S.C. §1983 for the violation of her constitutional right to be free from any deprivation of liberty without due process of law under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

183.        The conduct and actions of defendant, Police Officers WILKINSON, LT BUETI, SGT NACKE, and John Doe officers 1-10,  acting under color of law, in deliberately pushed, shoved and  violently cuffed plaintiff while lawfully present at the municipal building of the  Village of Briarcliff Manor, and was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and considerable bodily harm, pain and suffering, in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and Fourth, Fifth and Fourteenth Amendments to the United States Constitution. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### SIXTH CLAIM FOR RELIEF

**42 U.S.C. §1983 and Fourteenth Amendments Against all Defendants**

184.        Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 183 with the same force and effect if more fully and at length set forth herein.

185.        That on or about January 04, 2021, in the State of New York, County of Westchester, Village of Briarcliff Manor, and at subsequent times thereafter, including but not limited to the Precinct, central booking, Criminal Court, the Grand Jury, the defendants, their agents, servants and employees maliciously prosecuted and detained plaintiff, ELIZABETH HARDING WEINSTEIN, without any just right or grounds thereof. That the plaintiff was wholly innocent, and was forced by the defendants to submit to court proceedings.

186.        That the defendants, their agents, servants and employees acting in the performance of their employment and within the scope of their authority, testified falsely and withheld vital information before the Judge of the Criminal Court of the State of New York, in the County of Westchester.

187.        That on or around January 8, 2021, the Court, in the State of New York, County of Westchester, held a bail hearing in furtherance of the Abuse By and Fraud Upon the Court.

188.        That the said prosecution and criminal charges and hearings were instituted and procured by the defendants, their agents, servants and employees in this action unlawfully and maliciously and without any reasonable or probable cause whatsoever. That the commencement and/ or continuation of the criminal proceedings by the defendants against the plaintiff is without probable cause, with malice towards the Plaintiff.

189.        That by reason of the aforesaid unlawful and malicious prosecution, and abuse of process. The plaintiff was deprived of her liberty, was subjected to great indignity, humiliation, pain and great distress of mind and body and was held up to scorn and ridicule, was injured in his character and reputation, was prevented from attending her usual business and avocation, was injured in his reputation in the community and the said plaintiff has been otherwise damaged.

190.        That by reason of the aforesaid, the plaintiff has been damaged in a sum to be determine at trial.


## SEVENTH CLAIM FOR RELIEF

### *Respondeat Superior*

191.        Plaintiff repeats and re-alleges by reference paragraphs 1 through 190 as if fully set forth herein.

192.        The conduct of Defendants WILKINSON, BUETI, NACKE, GALBRAITH, CAMPUS, BASSETT occurred while they were on duty (with Defendant Wilkinson, Nacke, Galbraith, Campus and Bassett in uniform), in and during the course and scope of their duties and functions as employees of the Briarcliff Manor Police Department and while they were acting as agents and employees of Defendant Village of Briarcliff Manor. Among other things, Defendant Village of Briarcliff Manor is liable to Plaintiff under the common law doctrine of *respondeat superior*.

## PRAYER FOR RELIEF

193.    Plaintiff repeats and re-alleges by reference paragraphs 1 through 192 as if fully set forth herein.

That by reason of the aforesaid, the plaintiff requests the following relief:

a) **Compensatory damages in a sum of to be determined at trial;**

b) **Punitive damages in a sum to be determined at trial;**

c) **An award of reasonable attorney's fees, costs and disbursements;**

d) **The injunctive relief of recusal of Defendant Judge Howard T. Code from any claims before him where Plaintiff is a Party; Dismissal of arrest charges against Plaintiff; return of Plaintiff's seized property, to wit: two cell phones;**

**And any such other and further injunctive and/or damage relief as this Court may deem just, meet and proper under the circumstances.**

### PLAINTIFF DEMANDS TRIAL BY JURY

Dated:  Westchester, New York
         March 8, 2021

JUSTIN T. GREEN
NOTARY PUBLIC, State of New York
No. 02-GR6001429
Qualified in New York County
Commission Expires January 12, 2022

ELIZABETH HARDING WEINSTEIN, Pro Se

## **VERIFICATION**

ELIZABETH HARDING WEINSTEIN, being duly sworn deposes and says:

I am the plaintiff herein and have read the foregoing VERIFIED COMPLAINT and know the contents to be true to my own knowledge except as to those matters therein stated to upon information and belief, and that, as to those matters, I believe them to be true.

DATED:   Westchester, New York
March 8, 2021

ELIZABETH HARDING WEINSTEIN
Currently Homeless by the Courts
Permenant Address:
180 River Road
Briarcliff Manor NY 10510
Lizharding1@mac.com
646-261-7685

Sworn to before me this
____ day of March, 2021

JUSTIN T. GREEN
NOTARY PUBLIC, State of New York
No. 02-GR6001429
Qualified in New York County
Commission Expires January 12, 20___

NOTARY

LETTER FROM DOMESTIC VIOLENCE
COUNSELOR DOCUMENTING ABUSE BY
BRIAN STRYKER WEINSTEIN SINCE 2013
AND AFFIRMING NO PSYCHIATRIC ISSUES

# EXHIBIT A

**Elizabeth Bussian, LCSW**
**PSYCHOTHERAPY**
180 S. Broadway, Suite 301
White Plains, NY 10605
(914) 356-1988

_____

Re:    Elizabeth Weinstein

Date:   2/1/21

To whom it may concern:

My name is Elizabeth Bussian and I am writing on behalf of my patient Elizabeth Weinstein in regards to her participation in therapy in my practice.   I have worked in the field of trauma therapy in both the setting of the Westchester District Attorney's office (10years) and private practice (18 years). Trauma therapy is provided through CBT (Cognitive Behavior Therapy) and EMDR (Eye Movement Desensitization and Reprocessing) techniques.

Elizabeth started therapy with my office in 2013 after an assault reported to the Office of the District Attorney of Westchester's office.  She has continued to participate in sessions to work through symptoms of PTSD (Post Traumatic Stress Disorder) and a history of abuse in childhood.  Through therapy she revealed that she was also experiencing emotional abuse in her current relationship.  Elizabeth has successfully been working through treatment with CBT (Cognitive Behavior Therapy) to learn how to manages past trauma and use coping techniques to be released from her past.

During Elizabeth's therapy journey it also came to light that her relationship has been emotionally draining over the years.  She has shared examples of being the victim of gaslighting (manipulation by psychological means to make victim question their own sanity) and narcissistic abuse from her husband.  This type of abuse is hard to recognize on the outside as it typically occurs under the veil of what seems like a "typical" and healthy relationship.  The abuse is slow and systematic and is often coupled with many honeymoon periods that draw the victim back in to the relationship.  Over time this type of abuse drains the victim of any sense of safety or power in the relationship.  Elizabeth continues to work hard to cope with the effects of this type of manipulation and forge her own independence.

In my observations of past and current therapy Elizabeth presents connected and aware of her emotions.  I have no psychiatric concerns about Elizabeth and do not require a psychiatric evaluation.  Elizabeth is alert, engaged and appropriately responsive in session.  She will be continuing therapy sessions with my office to work through current stressors.

Please let me know if you need any additional information.

Sincerely.


Elizabeth Bussian, LCSW

Elizabeth Bussian, LCSW
PSYCHOTHERAPY
180 S. Broadway, Suite 301
White Plains, NY 10605
(914) 356-1988

Re:     Elizabeth Weinstein

Date:   8/12/20

To whom it may concern:

My name is Elizabeth Bussian and I am writing on behalf of my patient Elizabeth Weinstein in regards to her participation in therapy in my practice. I have worked in the field of trauma therapy in both the setting of the Westchester District Attorney's office (10years) and private practice (18 years). Trauma therapy is provided through CBT (Cognitive Behavior Therapy) and EMDR (Eye Movement Desensitization and Reprocessing) techniques.

Elizabeth started therapy with my office in 2013 after an assault reported to the Office of the District Attorney of Westchester's office. She participated in weekly sessions to work through symptoms of PTSD (Post Traumatic Stress Disorder) and a history of abuse in childhood. Through therapy she revealed that she was also experiencing emotional abuse in her relationship. Elizabeth has successfully been working through treatment with CBT (Cognitive Behavior Therapy) to learn how to manages past trauma and use coping techniques to be released from her past.

During Elizabeth's therapy journey it also came to light that her relationship has been emotionally draining over the years. She has shared examples of being the victim of gaslighting (manipulation by psychological means to make victim question their own sanity) and narcissistic abuse from her husband. This type of abuse is hard to recognize on the outside as it typically occurs under the veil of what seems like a "typical" and healthy relationship. The abuse is slow and systematic and is often coupled with many honeymoon periods that draw the victim back in to the relationship. Over time this type of abuse drains the victim of any sense of safety or power in the relationship. Elizabeth has been working hard to cope with the effects of this type of manipulation and forge her own independence.

In my observations of past and current therapy Elizabeth presents connected and aware of her emotions. I have no psychiatric concerns about Elizabeth and do not require a psychiatric evaluation. Elizabeth is alert, engaged and appropriately responsive in session. She will be continuing therapy sessions with my office to work through current stressors.

Please let me know if you need any additional information.

Sincerely,

Elizabeth Bussian, LCSW

MAY, 2020 TEXT EXCHANGE WITH ELIZABETH
HARDING WEINSTEIN (IN BLUE) AND BRIAN STRYKER
WEINSTEIN (IN GREY) AFFIRMING BRIAN'S ISSUE
WITH PEDOPHILIA

# EXHIBIT B

